Elmer John LaPointe v. Commissioner.
LaPointe v. Commissioner
Docket No. 111586.
United States Tax Court
1943 Tax Ct. Memo LEXIS 255; 2 T.C.M. (CCH) 252; T.C.M. (RIA) 43278; June 10, 1943
*255 Elmer John LaPointe, pro se. E. C. Algire, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined a deficiency in income tax for the calendar year 1940 in the amount of $110.70. The sole question is whether the sum of $3,749.66 received by petitioner in 1940 from the Rutland Railroad Company constituted taxable income in that year. [The Facts] The petitioner is an individual residing at Chatham, New York. The return for the period here involved was filed with the collector of internal revenue for the fourteenth district of New York. In 1932 petitioner was in the employ of the Rutland Railroad Company as agenttelegrapher at Chatham, New York. On or about July 31, 1932, he was separated from this position and the work, which he had been doing, was thereafter performed by employees of another railroad at the same station at a lower cost. Until 1940 petitioner was without employment except for short periods of time, usually less than one day. Upon separation from his employment petitioner filed a protest, in writing, with the Rutland Railroad Company, claiming that his discharge had been in violation of an *256 agreement between the railroad company and the labor union of which he was a member. Petitioner and the representatives of the labor union claimed that petitioner should be restored to his position as of July 28, 1932, and that he should be imbursed for the monetary loss sustained by reason of his discharge, the total of which would have amounted to approximately $21,000. In 1940 petitioner's claim was compromised and he received in settlement thereof $3,749.66. This amount was reported in his income tax return for that year as non-taxable income. In determining the deficiency respondent included the entire amount in his gross income. [Opinion] The petitioner contends that during the period from 1932 to 1940 he performed no work, labor or service for the railroad company; that the amount he received was not the fruit of capital or of labor or of both combined; and that he was not in receipt of income within the rationale of Eisner v. Macomber, 252 U.S. 189. He also urges that the amount received by him was in the nature of a "windfall", citing Central Railroad Co. of New Jersey, v. Commissioner, 79 Fed. (2d) 697. *257 Respondent determined the deficiency upon the theory and now contends that the amount constituted gross income as such term is defined in section 22 (a) of the Internal Revenue Code. [1] We agree. The money was received by petitioner in settlement of a claim for wages lost on account of the action of the Railroad Company. It was not received in payment of a claim for damages, cf. Farmers' and Merchants' Bank of Catlettsburg, Ky. v. Commissioner, 59 Fed. (2d) 912, nor was it, in our judgment, in the nature of a windfall as claimed by petitioner. Cf. Central Railroad Company of New Jersey v. Commissioner, supra.The position taken by the petitioner and the representatives of the labor union in pressing the claim was that the job of agent-telegrapher had not been abolished and therefore that petitioner should be assigned to it as of the date he was removed and be paid wages during the period of his absence. *258 The payment in compromise must be considered in the light of the claim from which it was realized. Farners' and Merchants' Bank of Catlettsburg, Ky. v. Commissioner, supra.This principle was recognized in Central Railroad Company of New Jersey v. Commissioner, supra, upon which petitioner relies, and it was there emphasized that "the settlement was not based on a suit by the taxpayer to recover profits of which he had been deprived." We considered somewhat the same principle in George K. Gann, 41 B.T.A. 388, where a taxpayer, having a contract right to receive compensation over a period of time, received a single sum in cancellation of the contract. We held that the transaction resulted in the receipt by him of income. See also Walter M. Hort, 39 B.T.A. 922, affd., 313 U.S. 28. When considered in the light of the origin of the claim the payment here in issue was obviously income to petitioner. It was essentially a substitute for wages earned. We think that the respondent correctly included it in gross income. It is therefore *259 held that no error was committed in determining the deficiency. Decision will be entered for the respondent. Footnotes
1. SEC. 22. GROSS INCOME. (a) General Definition. "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent. dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income.↩